IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEAN SIMPSON, <br>       *Plaintiff,* <br> v. <br> LM GENERAL INSURANCE CO., <br>       *Defendants.* | CIVIL ACTION <br><br> NO. 23-4133 |

**Pappert, J.**                                                                                      **November 20, 2024**

## **MEMORANDUM**

On September 26, 2022, Sean Simpson, who worked at a car dealership in Philadelphia, was driving one of the dealership's loaner cars back to the lot after having it washed when he was struck by an underinsured driver. Simpson was insured under a policy issued by LM General Insurance Company that included underinsured motorist (UIM) coverage. LM General denied Simpson's UIM claim, citing the policy's "regular use" exclusion. LM General moved for summary judgment and the only question for the Court is whether the exclusion applies. For the reasons that follow, it does not and the Court denies the motion. While Simpson did not move for summary judgment on the coverage issue, the denial of LM General's motion allows the Court to find for Simpson on that issue.

I

In September of 2022, Sean Simpson was working as a "valet" at the Piazza Honda dealership in Philadelphia. (Joint Stip. of Facts 1, ECF No. 20-5.) Simpson's job responsibilities included greeting and assisting customers in the service center, cleaning the lot, parking customer vehicles in the lot for service and bringing their cars

back to the customer entrance. (Simpson Dep. Tr. at 14:4-14, ECF No. 20-6.) About once or twice a week, when Simpson's colleague was unavailable to do so, his supervisor would ask him to have one of the dealership's loaner vehicles washed and filled with gas. (*Id.* at 35:19-24, 36:5-10.) Simpson did not have access to the keys for any loaner, (Joint Stip. of Facts at 2), and he was not allowed to drive the cars for any personal errands, (*id.* at 36:11-24, 37:1-7.)

On September 26, 2022, Simpson's supervisor asked him to take one of the loaners for a car wash. (Joint Stip. of Facts at 3.) As he was driving back to the dealership, a driver making a left turn from a crossroad hit Simpson's car, totaling it and injuring Simpson. (Injury Rep., ECF No. 19-7); (Simpson Dep. at 38:4-12, 40:1-4, 40:19-21, 41:11-18.) The dealership's insurance policy for the loaner car did not provide UIM coverage, and the other driver's insurance policy only provided bodily injury insurance up to a $15,000 limit. (Joint Stip. of Facts at 2.) After settling the claim against the other driver for $15,000, Simpson submitted a claim to LM General. (*Id.*)

Simpson's LM General policy included UIM coverage up to $100,000 per person and $300,000 per accident, (LM General Policy at 3, ECF No. 19-4), but it also included a so-called regular use exclusion:

> We do not provide Underinsured Motorist Coverage for "bodily injury" sustained [b]y an "insured" . . . while using, "occupying", or when struck by, any non-owned motor vehicle that is furnished or made available for your regular use, or the regular use of a "family member", which is not insured for Underinsured Motorists Coverage under this policy.

(*Id.* at 26.) On January 12, 2023, LM General denied Simpson's claim, relying on this exclusion. (Joint Stip. of Facts at 2); (Denial Letter at 4, ECF No. 19-5.)

II

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Smathers v. Mutli-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 286 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

III

A

In Pennsylvania, "the interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court." *Gardner v. State Farm Fire & Ca. Co.*, 544 F.3d 553, 558 (3d Cir. 2008) (quotation omitted); *see also Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006) ("The interpretation of an insurance policy is a question of law."). "When the language of the policy is clear and unambiguous, we must give effect to that language." *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007) (quotation omitted). If the policy language is ambiguous, it must be construed against the insurer. *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999).

Courts generally find regular use exclusions to be unambiguous and resolve the attendant coverage disputes as a matter of law. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Shoemaker*, 965 F. Supp. 700, 703 (E.D. Pa. 1997); *Prudential Prop. & Cas. Ins. Co. v. Hinson*, 277 F. Supp. 2d 468, 472 (E.D. Pa. 2003). Most regular use exclusions read largely like LM General's, and many courts have interpreted them. "In common usage, 'furnished' means 'to provide or supply;' 'available' means 'suitable or ready for use' and 'readily obtainable, accessible;' and 'regular' means 'usual, normal or customary.'" *Automobile Ins. Co. v. Curran*, 994 F. Supp. 324, 330 (E.D. Pa. 1998). Thus, "the test of a regular use exclusion is not use but *availability for use* or ownership by a member of a group who would be likely to make their cars available for each other's use." *Id.* Further, 'regular use' suggests a "principal" or "habitual" use as opposed to merely an "occasional or incidental use." *Crum and Forster Personal Ins. Co. v. Travelers Corp.*, 631 A.2d 671, 673 (Pa. Super. 1993).

While the interpretation of insurance contracts is a question of law for the courts, whether a vehicle falls within the regular use exclusion is a question for the factfinder. *Crum and Forster*, 631 A.2d at 673. Sometimes, although an exclusion is unambiguous, courts "struggle with its application because each case must be decided on its own facts and circumstances." *Id.* Here, the parties have stipulated to the facts the Court needs to decide the issue.

B

LM General claims Simpson's use of the dealership's loaner vehicles once or twice a week falls "squarely" within the regular use exclusion. (Mot. for Summ. J. at 11, ECF No. 19-1.) To support this contention, LM General cites to facts showing that

Simpson was working within the scope of his employment. (*Id.* at 7-9.) But that is undisputed. (Joint Stip. of Facts 1, ECF No. 20-5.) The issue is whether Simpson's use of a loaner vehicle roughly once a week constitutes a principal or incidental use.

i

LM General relies on cases where the insureds' access to a fleet of vehicles as part of their job responsibilities fell within the regular use exclusion. True, "[c]ourts have held that the regular use exclusion applies when a fleet of vehicles, as opposed to a specific vehicle, are available for the use of an insured." *Prudential Property & Cas. Ins. Co. v. Armstrong*, No. 03-4575, 2004 WL 603416, at *5-6 (E.D. Pa. Mar. 24, 2004). For example, in *Armstrong*, the regular use exclusion prevented recovery by a Park Ranger, even though he was driving the vehicle at issue for the first time when the accident occurred, because his "job responsibilities included riding in and/or operating Park Commission vehicles *on a regular basis*." *Id.*, at *9 (emphasis added). The same is true in the other fleet cases LM General cites—in each, the insureds drove one of many fleet vehicles as part of their principal job responsibilities and were denied UIM coverage under the regular use exclusion. *See Erie Ins. Group v. Catania*, 95 A.3d 320 (Pa. Super. Ct. 2014) (delivery truck driver); *Prudential Prop. & Cas. Ins. Co. v. Peppelman*, No. 02-1515, 2003 WL 25795214 (E.D. Pa. Apr. 25, 2003) (service technician driving a company vehicle to service assignments); *Williams v. GEICO*, 32 A.3d 1195 (Pa. 2011) (police officer driving a police cruiser); *Kuhn v. Liberty Mut. Ins. Co.*, No. 22-cv-02445, 2024 WL 1197513 (E.D. Pa. 2024) (same); *Calhoun v. Prudential Gen. Ins. Co.*, No. CV-04-1576, 2005 WL 1154599 (M.D. Pa. May 5, 2005) (same); *Brink v. Erie Ins. Group*, 940 A.2d 528 (Pa. Super. Ct. 2008) (same).

ii

But in each of these cases, as with most coverage disputes involving the regular use exclusion, the fleet vehicles in question were furnished for *the employee'*s principal use and necessary to complete their *principal job functions*. That isn't the case here.[1]

A far more analogous case is *Dixon v. GEICO*, 1 A.3d 921 (Pa. Super. Ct. 2010). There, the Pennsylvania Superior Court held that the regular use exclusion was inapplicable to a postal worker whose primary job responsibilities involved "washing vehicles, replacing fluids or lights, operation of a tow truck, snow removal and transporting vehicles from one location to another." 1 A.3d 921, 923 (Pa. Super. Ct. 2010). Crucial to the court's holding was that Dixon:

> . . . had a variety of job duties, many if not most of which did not involve any use of a vehicle. He did not have regular or recurring access to this vehicle, or any vehicle from a fleet. In fact, the vehicle in question was not provided for his use at all. He was merely returning it somewhere else. His one time ferrying of the mail delivery vehicle in question, after repair, was merely a transport of the restored vehicle back to its primary location in West Philadelphia where someone else would put it to regular use, delivering mail.

*Id.* at 927.

As in *Dixon*, many, if not most, of Simpson's job responsibilities did not involve driving the loaner vehicles. *See* (Simpson Dep. at 14:4-14). There was no implied "understanding with the owner of the vehicle that [Simpson] could use the automobile .

---

[1] LM General also cites to *Rother v. Erie Ins. Co.*, 57 A.3d 116 (Pa. Super. Ct. 2012), where the regular use exclusion precluded UIM insurance coverage for a son who had been granted exclusive use and possession of his father's car to drive to work and for emergencies. LM General points to that plaintiff's consistent "pattern of use" which led to the finding of regular use. *Id.*

But *Rother* dealt with an intrafamily vehicle loan, not one furnished for business use. The standard is different for intrafamily loans; courts have generally held that the insured's access to the vehicle's key and blanket permission to drive the vehicle indicate regular availability for use. *Shoemaker*, 965 F. Supp. at 706. Simpson did not have access to the loaner cars' keys, nor blanket permission to drive them.

. . at such times as he . . . desired, if available." *Id.* (citing *Crum & Forster*, 631 A.2d at 673). Simpson merely drove the vehicle to a car wash and returned it to the lot, "where someone else would put it to regular use." *Dixon*, 1 A.3d at 927. As in *Dixon*, Simpson's use of the loaner cars were incidental to his regular job responsibilities.[2]

### iii

Other cases support the conclusion that the regular use exclusion does not apply to Simpson's accident. In *Liberty Mutual Ins. Co. v. Sweeney*, Sweeney was a repair-shop owner who had an arrangement with Tradewell, the owner of a rental car company, in which Sweeney's customers could rent cars from Tradewell while their cars were in the shop. 689 F.3d 288, 296-297 (3d Cir. 2012). Occasionally, Sweeney himself would drive the rental car from Tradewell's company to a customer's house. *Id.* When he was involved in an accident in one of Tradewell's rental cars, Liberty Mutual relied on regular use exclusion to deny coverage. The Third Circuit Court of Appeals, reversing the district court, held that the regular use exclusion did not apply because, as in *Dixon*, there was no "understanding between Mr. Sweeney and Mr. Tradewell that Mr. Sweeney had general access to Mr. Tradewell's fleet of vehicles." *Id.*

---

[2] In light of *Dixon*, one case LM General cites merits further attention. In *Reeves v. Travelers Cos.*, an electricity technician for the City of Philadelphia would load up a City truck and drive it to job sites where he would fix broken street lights. 296 F. Supp. 3d 687, 691-92 (E.D. Pa. 2017). The plaintiff there argued that the vehicle was not furnished for his principal use because "he performed his core duties as a trades helper outside the truck in which he was riding at the time of the accident." *Id.* at 692. The court rejected that argument, holding the regular use exclusion did apply even though his primary job responsibilities were to be "performed outside the vehicle." *Id.*

But in *Reeves*, the use of the City vehicle was necessary to the performance of the insured's *principal* job functions, while Simpson's use of the loaner vehicle was necessary only to the performance of an *incidental* one. *See also Costello v. GEICO,* CV-09-1246, 2010 WL 1254273, at *12-13 (M.D. Pa. Mar. 25, 2010) (holding the regular use exclusion applied to a state auditor who was furnished a state-owned vehicle to perform his principal functions because he "had regular access to a Commonwealth vehicle").

In *Roeser v. State Farm Ins. Cos.*, the regular use exclusion did not apply to a car dealership mechanic who was in an accident while test driving a dealership-owned vehicle after repairs. 916 N.E.2d 533 (Ohio Ct. App. 2009). That court stated:

> (1) Neither this vehicle nor any other at the dealership was available to appellant for most of the time. (2) Appellant's use of this vehicle or any other was, at best, occasional. (3) Appellant's use of this vehicle or any other at the dealership required permission. There is nothing in the record suggesting that appellant had any authority to use any dealership vehicle at will. (4) Appellant's use of any vehicle owned by the dealership or its customers was only within the circumscribed scope of his duties as a mechanic. (5) There is nothing in the record to suggest that appellant was on any frolic or detour for his own purposes.[3]

*Id.* at 536. Here, the loaner vehicles were not available to Simpson most of the time, his use of the loaners was occasional, required special permission, and was within the circumscribed scope of his duties at the car dealership.[4]

## IV

Simpson did not move for summary judgment. But the Court may grant summary judgment to the nonmovant *sua sponte* and without notice if: "(1) the point at

---

[3] The fifth *Roeser* factor cuts against Simpson. After washing the loaner vehicle, Simpson made a slight detour to recover a key from his son. (Simpson Dep. at 50:3-7.) But that alone does not present an issue of fact as to whether or not Simpson had *carte blanche* to use the car for personal reasons.

[4] LM General contends that Pennsylvania public policy supports the application of the regular use exclusion to Simpson's accident. While Pennsylvania law requires insurers to provide UIM coverage under all policies, 75 Pa. Cons. Stat. § 1731(a), regular use exclusions have been found to not violate public policy. *See, e.g.*, *Rush v. Erie Ins. Exch.*, 308 A.3d 780 (Pa. 2024); *Williams v. GEICO Government Employees Insurance Co.*, 32 A.3d 1195 (2011). Such exclusions serve the important function of preventing the "forced underwriting of unknown risks" by eliminating the insured's incentive to "obtain UIM coverage on one car and then drive an infinite number of non-owned vehicles." *Rush*, 308 A.3d at 791.
  Here, concluding that the regular use exclusion does not apply respects Pennsylvania's general preference for UIM coverage and does not contradict Pennsylvania's policy favoring the exclusion. Simpson had no ability to drive an infinite number of loaner cars—he only drove these cars when he was occasionally asked to by his supervisor. As in *Sweeney*, because Simpson was not given "unfettered access" to the loaner cars, an "expectation of an additional premium for [the loaner vehicles] vehicles would be unreasonable." 689 F.3d at 297.

issue is purely legal; (2) the record was fully developed, and (3) the failure to give notice does not prejudice the party." *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 219 (3d Cir. 2004).

These criteria are all met. Again, the interpretation of an insurance contract and the extent of its coverage is a legal question for the Court. Further, the parties stipulated to many facts and attached other materials which formed the fully developed factual record on the question of coverage. Finally, LM General will not be prejudiced by this decision, as it was the one that raised the issue of coverage by filing the motion. *Id.* ("Given that it was Gibson who moved for summary judgment on the issues of vagueness and overbreadth, he certainly had the opportunity to put his 'best foot forward.'" (citation omitted)). The Court grants summary judgment to Simpson on the issue of coverage.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.